**UNITED STATES of America**

v.

**L. Patrick GRAY, III.**

**Crim. No. 78–00179.**

United States District Court, District of Columbia.

Oct. 3, 1980.

John W. Nields, Jr., Francis J. Martin, Daniel S. Friedman, Dept. of Justice, Washington, D. C., for the United States.

Alan I. Baron, Frank, Bernstein, Conaway & Goldman, Baltimore, Md., for L. Patrick Gray, III.

Brian P. Gettings, Frank Dunham, Jr., Mark D. Cummings, Leonard, Cohen, Gettings & Sher, Washington, D. C., and Arlington, Va., for W. Mark Felt.

Thomas A. Kennelly, Howard S. Epstein, Diuguid, Siegel & Kennelly, Washington, D. C., for Edward S. Miller.

### MEMORANDUM AND ORDER

BRYANT, Chief Judge.

On April 10, 1978, a one count indictment was filed against L. Patrick Gray, III, W. Mark Felt and Edward S. Miller. The defendants are charged with violating 18 U.S.C. § 241 (1976), by conspiring to "injure and oppress citizens of the United States ... in the free exercise and enjoyment of certain rights and privileges ..." secured

by the fourth amendment and "the laws of the United States." Indictment at ¶ (7).[1]

The indictment lists thirty–two overt acts "committed and caused to be committed" by the defendants in furtherances of the conspiracy. The first five are relevant for present purposes. These include: (1) "a conversation" in August 1972 between Miller and Gray; (2) a speech by Gray to a conference of FBI officials on or about September 12, 1972; (3) the approval by Gray of an agenda for a "Weatherman in–service training course to be held at Quantico, Virginia, from October 2, 1972, to October 6, 1972; (4) a speech by Gray to a conference of FBI officials on or about September 26, 1972; and, (5) the presentation of a lecture "on how to conduct surreptitious entries" to agents attending the Weathermen training session identified in (3) above.

## II.

Defendant Gray has moved to dismiss the indictment, invoking the supervisory power of this court over grand juries. His motion rests on information unearthed by defense counsel after the indictment: new facts highlight the "incredibl[e] shodd[iness]" and "sheer incompetence" of the government's investigation leading to the indictment of Gray, as well as illuminate serious misrepresentations made by government attorneys presenting the case to the grand jury. Memorandum In Support Of Motion To Dismiss at 12. This new information supposedly undermines the government's only claim against Gray, i. e., that he gave " 'generic authorization' " to use surreptitious entries in the pursuit of Weathermen fugitives. Id.

As for overt acts (2) and (4), material turned over by the government during pre–trial discovery included contemporaneous notes prepared by two FBI agents ("McNeeley" and "Shanahan" notes) present at the conferences. Defendant Gray contends that these notes, along with three additional sets of contemporaneous notes of FBI agents ("Reed," "Basher," and "Moreland" notes) discovered independently by defense counsel during post–indictment interviews, establish that he never authorized surreptitious entries against Weathermen relatives or acquaintances at either conference. Two important government witnesses ("Moore" and "Young") have reviewed these contemporaneous notes and revised their earlier testimony. Neither can now recall Gray authorizing surreptitious entries against the Weathermen.[2]

Mr. Gray attacks overt acts (3) and (5) with equal zeal. The agenda mentioned in overt act (3) referred to a lecture on "special investigative techniques" to be given by Agent Courtland Jones. The grand jury was apparently informed that Mr. Jones did deliver the lecture, after Mr. Gray approved the agenda aware that the presentation would include "bag jobs." In fact, Mr. Gray has uncovered records indicating Mr. Jones never gave the lecture.[3]

Finally, Mr. Gray focuses on a statement by government attorneys, made before the grand jury, that the "record" reflects bag jobs against the Weathermen commenced after the September 1972 conferences. Affidavit of Counsel Setting Forth Facts Pertaining To Motion Of Defendant Gray To Dismiss Indictment at ¶ (15). Material turned over to Gray by the government,

---

1. It is alleged that the purpose of the conspiracy was "to utilize, and to cause other officials and agents of the FBI to utilize, the technique of surreptitious entry into the homes and premises of relatives and acquaintances of Weatherman fugitives, in the hope of discovering something that might in some way assist the FBI in locating Weatherman fugitives." Id. at ¶ (8).

2. Counsel for Mr. Gray also interviewed approximately fifty–five agents who had attended the conferences, and had informed government counsel that they had no recollection of any statement by Gray. After reviewing the notes discussed above, twenty–four agents recalled that Gray had not authorized bag jobs against the Weathermen; these agents added that they would have remembered any such authorization. Memorandum In Support Of Motion To Dismiss at 3.

3. It appears that Jones was suspended by Gray from October 3, 1972 through October 24, 1972. The government contends the lecture was given by another agent.

however, indicates a number of bag jobs against Weathermen, both before Gray became Acting Director and after he left office. *Id.* at ¶ (16).

The government virtually concedes the results of Mr. Gray's post–indictment investigation. *See* Opposition To Gray's Motion To Dismiss The Indictment at 3, 6 ("proof that Gray announced a generic authorization of bag jobs at the SAC conference is now' unconvincing"; "wildcat bag jobs" against Weathermen done in FBI field offices prior to September 1972); Stipulation of Counsel (McNeeley, Shanahan, Reed, Basher, and Moreland notes not presented to grand jury). But it does argue that a case against Gray remains,[4] and that there is no evidence of the serious prosecutorial conduct traditionally associated with the dismissal of an indictment.

### III.

Federal courts have recently turned a more discerning eye towards the evidentiary basis of a grand jury's indictment. *See* Arenella, *Reforming The Federal Grand Jury And The State Preliminary Hearing To Prevent Conviction Without Adjudication*, 78 Mich.L.Rev. 463 (1980) [hereinafter "*Reforming*"]. Indictments have been dismissed (or remanded for consideration of dismissal), when prosecutors have obtained exculpatory evidence and failed to present it to the grand jury, *United States v. Phillips Petroleum Co.*, 435 F.Supp. 610, 620 (N.D.Okl.1977) (dismissal), or made numerous "graphic and misleading" references calculated to impugn the integrity of defendants, *United States v. Serubo*, 604 F.2d 807, 814–15, 818 (3rd Cir. 1979) (remand to dismiss indictment if second grand jury tainted in any way by prosecutorial misconduct present in first grand jury.).

This court is willing to assume that the evidence marshalled by defendant Gray is in some way exculpatory. *See Reforming, supra* at 553, 565 (exculpatory evidence cre-

ates a reasonable doubt about the defendant's guilt). The problem is that Mr. Gray has failed to establish an additional prerequisite to dismissing an indictment: awareness by the prosecutors of the exculpatory evidence in question, accompanied by a failure to include such evidence, or at minimum notify the grand jurors of its existence, during the presentation of the case. *Compare United States v. Ciambrone*, 601 F.2d 616, 624–25 & n.6 (2nd Cir. 1979) (dismissal not warranted absent knowledge by prosecutor of exculpatory evidence) with *United States v. Provenzano*, 440 F.Supp. 561, 565–66 (S.D.N.Y.1977) (dismissal of indictment appropriate when U.S. Attorney failed to present to grand jury "concerns expressed [to him] by the one eyewitness without whom there could be no indictment"); *see Reforming, supra* at 565 (burden of disclosure applies only when "prosecutor is aware of exculpatory evidence").

In the present case, much of the material shedding light on Gray's role at the September 1972 conferences, *e. g.*, the Reed, Basher, and Moreland notes, the recantation of Moore and Young, resulted from the defendant's investigation well after the indictment was filed. There also is no indication that the Shanahan and McNeeley notes, turned over to the defendants during discovery, came to the attention of the prosecutors while the grand jury was sitting. *Cf. United States v. Olin Corp.*, 465 F.Supp. 1120, 1128–29 (W.D.N.Y.1979) ("prosecutor is not obligated to sift through all the evidence to find statements or documents that might be exculpatory"). The same holds true for information regarding the suspension of Courtland Jones. Finally, there is no evidence that the prosecutors were aware of the apparently widespread use of bag jobs in Weathermen investigations before, and after, Gray took office. Defendant Gray concedes that the grand jurors were informed briefly of two Weathermen bag jobs performed by the New York office prior to September 1972. The statement

---

**4.** "[T]he heart of the case against Gray remains": Felt and Miller allege that they acted with Gray's approval, and surrounding events, *e. g.*, their approval of "DO NOT FILE" memo-

randa, corroborate their claim. Opposition To Gray's Motion To Dismiss The Indictment at 3–6; *supra* at 151 (overt act (1)).

that bag jobs against the Weathermen "commenced following the ... [conferences] in September of 1972" most likely reflected one prosecutor's "honest view" of an apparent change in FBI policy in favor of a more concerted use of the technique, *see United States v. Ciambrone*, 601 F.2d 616, 624 (2nd Cir. 1979), rather than the sort of deliberate misstatement underlying dismissal of an indictment, *supra* at 152.

### IV.

There is no doubt that the exhaustive and admirable investigation by counsel for Mr. Gray has revealed certain weaknesses in the case the government presented to the grand jury. This court is convinced, at least in this instance, that the factual lacunae attributed to the prosecutors reflect an honest, albeit imperfect, attempt to recreate past events. Mr. Gray will have an opportunity at trial to set the record straight.

For the reasons discussed above, it is hereby ORDERED that the motion of defendant Gray to dismiss the indictment is denied.